UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

     Plaintiff,                          Case No.  8:23-cv-02067-SDM

v.

KANES FURNITURE, LLC,
D/B/A KANE'S FURNITURE,

     Defendant.

_____/

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S RENEWED MOTION TO COMPEL DISCOVERY

Defendant, Kanes Furniture, LLC, d/b/a Kane's Furniture ("Defendant") hereby responds in opposition to Plaintiff U.S. Equal Employment Opportunity Commission's ("EEOC") Renewed Motion to Compel Discovery (Doc. 45) as follows:

## I.   THE MOTION TO COMPEL PRODUCTION OF DOCUMENTS HAS BEEN RESOLVED.

The EEOC filed its Renewed Motion to Compel Discovery on June 17, 2024. Before Defendant responded to the motion, the Court entered an order directing the parties to meet and confer regarding production of documents and to file a joint notice, on or before July 3, 2024, stating what portion of the documents at issue in EEOC's motion have been produced.  (Doc. 47.)  To the extent, if any, that there

remained any unresolved issues, the Court directed the parties to include in the joint notice mutually available times for an in-person hearing.  *Id.*

Counsel for the parties participated in a Teams virtual meeting on July 2, 2024 and successfully resolved all of the issues set forth in the renewed motion to compel as to document production. In fact, Defendant had already produced the ESI data at issue in the motion, as promised, on June 25, 2024.  Defendant made the production within "5-7" days of the parties' agreement on the manner in which the production would be made.[1]  As the conferral was concluding, Defendant's counsel specifically asked whether there were any outstanding issues that the parties needed to discuss or that remained unresolved.   EEOC's counsel did not identify any unresolved issues.  Accordingly, Defendant's counsel believed the renewed motion to compel had been fully resolved.

---

[1] This is the second time that EEOC has engaged in conferral with Defendant, agreed upon a plan for production, and then filed a motion to compel during the period agreed upon for production. The day before EEOC filed its first motion to compel, EEOC sent an email stating it intended to file a motion to compel regarding certain spreadsheet data. Defendant responded promptly and advised EEOC that the spreadsheets would be produced the next day. Defendant produced the spreadsheets as promised. Without first scheduling a meet and confer conference regarding the proposed motion to compel, EEOC proceeded to file the motion to compel even though it had received the spreadsheets.  (Doc. 23.) Similarly, EEOC filed the renewed motion to compel, despite being well-informed regarding the substantial amount of ESI data that Defendant had gathered and despite being fully-informed and engaged in discussions with Defendant to reach an agreement on production of that data – and, most importantly, despite being fully-informed of the technical difficulties presented in managing over **379GB** of ESI data.  Evidently, in an effort solely to cast Defendant in a negative light, EEOC filed the renewed motion before the time agreed upon for Defendant to complete the processing of the data and then produce it to EEOC based on nothing more than EEOC's disingenuous assertion that it was "weary of Defendant's representation." (Doc. 45 at p. 8.) Most notably, EEOC once again failed to schedule a good faith meet and confer conference with Defendant before filing the renewed motion.

During preparation of the joint notice to the Court, EEOC asserted for the first time that EEOC still intended to pursue its request for sanctions and, therefore, the parties needed to provide proposed dates for a hearing. Defendant's counsel objected, noting that EEOC's counsel did not raise the issue of sanctions during the conferral meeting and that issue was not discussed.  At EEOC's insistence, the parties provided their availability for hearing should the Court determine that any portion of the renewed motion to compel remains unresolved.

Defendant has diligently worked to provide an enormous amount of discovery to EEOC – in fact, Defendant has produced significantly in excess of 161,000 documents, numerous complex spreadsheets, and over **623,000** pages of documents to date – and provided answers to interrogatories.  Defendant has reproduced documents because EEOC complained about the manner in which the documents were titled, demanding that the title include the Bates number.  Defendant even voluntarily participated in a virtual conference for an hour and half with counsel for EEOC during which Defendant's HR Business Partner, Cheyenne Smith, answered questions and explained Defendant's applicant flow spreadsheets and documents. As has occurred on numerous occasions, EEOC then demanded more documents after the conference with Ms. Smith, demanded the documents be provided within 4 days, and Defendant timely complied.

EEOC's request for sanctions is frivolous and should be summarily denied. The Court should award sanctions to Defendant for its attorneys' fees and costs incurred in responding to this frivolous motion.

## II.   EEOC'S RENEWED MOTION IS WHOLLY MISLEADING AND FUNDAMENTALLY FLAWED.

To support its frivolous claim for sanctions, the EEOC presents a wholly misleading and incomplete summary of the facts and discovery proceedings to date. First, EEOC states in its introduction that Defendant "den[ied] employment to Charging Party Alexis Cross… because of [her] sex." (Doc. 45 at 2.) That is absolutely false.  Defendant, in fact, offered a warehouse job in the Distribution Center to Ms. Cross which she initially accepted and then voluntarily abandoned during the application process.  In fact, EEOC has not even alleged that Ms. Cross was qualified for the delivery driver job she purportedly was interested in and now has objected to providing any discovery regarding her qualifications.  EEOC has alleged only that "she had approximately one year of experience as a delivery driver" without any facts to support the nature of her experience in comparison with the job qualifications.  (Doc. 37 at p. 6, ¶ 31.)  While listing the job qualifications – notably heavy lifting – EEOC does not allege that Ms. Cross had any experience lifting heavy furniture or that she satisfied any of the minimum requirements for the job.

Next, EEOC attempts to mislead the Court by arguing that counsel for the parties "specifically discussed ESI discovery issues … at the initial Rule 26(f)

conference" and asserts that Defendant did not raise any concerns about ESI discovery at that point.  That is true – as far as it goes.  EEOC's argument, however, is fundamentally flawed because no reasonable party would have anticipated during a Rule 26(f) conference, and EEOC certainly did not foreshadow nor discuss with Defendant's counsel, that EEOC intended to serve extremely voluminous, overbroad, and burdensome discovery requests including its First Request for Production of Documents consisting of 22-pages and 61-paragraphs.  In fact, Defendant had no reason to anticipate such extensive, burdensome discovery because Defendant had previously responded to several requests for information from the EEOC during its investigation of Ms. Cross's charge of discrimination.

EEOC compounded the scope of the 61 requests to produce documents by including numerous sub-categories. For example, Request No. 10 contained forty-four (44) subcategories (subcategories a through rr) of information demanded for each applicant who applied for one of at least four (4) distinct job positions over a period of three (3) years.  Request 10 was so extensive in its demands that it consumed three pages of the Requests for Production. Similarly, Request No. 11 is equally as overbroad as Request No. 10.  Request No. 11 was patterned after No. 10 but requested a whopping 50 subcategories (subcategories a through ww) of information "about *all* individuals who worked in positions of (i) warehouse

associates; (ii) driver; and/or (iii) delivery assistant" during a 3-year period.[2] Needless to say, these two requests, alone, required countless hours to gather, analyze and produce responsive documents, much of which was stored electronically.

EEOC compounded the ESI discovery burden on Defendant by demanding electronically stored documents for 19 individuals during the four (4) year period of January 2020 to present. After gathering over **379GB** of ESI data, which took nearly three days just to download, Defendant conducted searches of the electronic data using 36 separate search terms provided by EEOC and provided a "hits" list to EEOC as soon as it became available.

The discovery demanded by EEOC has been extremely burdensome, costly and wholly out of proportion to the needs of this case. As set forth in its response to EEOC's first motion to compel, Defendant is a home furnishings retailer that does business regionally in Florida from Melbourne and Orlando, over to Tampa, and

---

[2] Notably, while proffering multipart requests to Defendant, EEOC objected to Defendant's straightforward and far less complex discovery requests to EEOC on the basis that the request "includes two discrete subparts…." EEOC, in fact, objected to every one of Defendant's 35 requests to produce and 11 interrogatories and objected to Defendant's subpoenas to Ms. Cross and several other witnesses identified in EEOC's initial disclosures **in an effort to block all discovery** directed to EEOC – the plaintiff in this action which bears the burden of proof. EEOC has produced a paltry 800 pages of documents to date by comparison with Defendant's production of over 623,000 pages – which is an understated number as spreadsheets that contain numerous columns of discrete information are assigned a single number.

down to Naples. Defendant maintains a Distribution Center and has a total of 17 retail stores.   Defendant employs approximately 600 employees company-wide. However, Defendant employs only approximately 150 employees in its Distribution Center, the location of the job positions at issue in this case.  Moreover, as to the job positions at issue, Defendant employs only approximately 30 drivers, 32 delivery assistants, 26 distribution warehouse assistants, and 44 stores warehouse associates. Accordingly, for a total of approximately 132 jobs at any given time, EEOC has demanded and Defendant has produced significantly more than 161,336 documents (the total of the ESI documents alone) and more than 623,000 pages of documents.

### III.   EEOC's REQUEST FOR SANCTIONS SHOULD BE SUMMARILY DENIED.

After working diligently to bury Defendant with extremely burdensome discovery and nearly daily lengthy, multi-paragraph emails demanding Defendant not only produce but explain its documents that inevitably resulted in follow-up emails demanding even more documents, EEOC knowingly makes wholly unfounded and false assertions in the renewed motion to fabricate a claim for sanctions.  For example, EEOC asserts such blatantly false assertions as "after seven (7) months of discovery, Defendant had only just run searches for ESI based upon agreed terms and downloaded the responsive documents" in June 2024 (Doc. 45 at 3) and "[i]t became clear that Defendant made no independent effort to collect and review ESI data for production at any time subsequent to receipt of EEOC's

Requests for Production of Documents in December 2023 or during the many months thereafter." (*Id.* at 6.) Contrary to EEOC's misleading and inaccurate assertions, Defendant had gathered ESI data much earlier as discussed with the Court during the hearing on April 24, 2024. During the hearing, Defendant described for the Court the fact that Defendant had gathered substantial ESI data (over 480,000 documents), had prepared a "hits" report utilizing EEOC's overbroad search terms that resulted in 121,158 deduplicated documents, provided the "hits" report to EEOC on March 21, 2024, the parties conferred regarding the broad scope of the ESI data, EEOC then waited until April 15, 2024 to provide a modified "hits" report to pare down the number of documents potentially responsive to certain search terms, and Defendant had processed a revised "hits" list that identified approximately 22,000 potentially responsive documents.

Defendant diligently began reviewing and processing ESI documents for production to EEOC. The EEOC complains that Defendant's initial ESI production contained a limited number of documents as compared with the 7,000 per week rolling schedule set by the Court, but there simply were not a sufficient number of responsive documents to produce at the rate of 7,000 per week. The EEOC's search terms included many common words that resulted in a "hit." However, the vast majority of documents that included a "hit" on a common word had absolutely nothing whatsoever to do with the documents requested by EEOC in its requests to

produce or the claims in this case. While Defendant's counsel reviewed several thousand documents, very few documents were even vaguely responsive as, for example, documents related to the EEOC investigation of Ms. Cross' charge which were produced.

During the hearing on April 24, 2024, the Court complimented the parties on the progress they had made in discovery. The Court specifically noted that "the parties had narrowed the issues significantly." (Doc. 34 at p. 3.) The Court granted EEOC's motion in part and denied the motion in part.

The Court overruled Defendant's objection to EEOC's inclusion of the store's warehouse associate position in its requests to produce. That ruling added significantly to Defendant's discovery burden in the weeks following the hearing. At the same time, and as disclosed to the Court during the hearing, the parties had discovered in late March that the ESI data Defendant had gathered did not include the entire time period requested by EEOC. Defendant had initially gathered documents for the entire time period of January 2020 to date but something went amiss in transferring that data to counsel for Defendant resulting in the data being limited to January 2022 to date. In addition, EEOC added two more custodians to its request for ESI data and Defendant agreed without requiring EEOC to serve another discovery request to gather ESI data for those additional custodians. In sum, after gathering the ESI data for the full period of January 2020 to date and the

additional two custodians, Defendant transferred **379GB** of ESI data to Defendant's counsel on or about May 6, 2024 and Defendant promptly engaged in conferrals with EEOC about how the parties would/could manage such a huge amount of ESI data. It is as to this huge data set that Defendant produced a "hits" report on or about June 4, 2024 which increased the total number of potentially responsive documents from 22,000 as reported to the Court in April to over 111,412 (combined) or 161,336 (combined and families) in June.  Thereafter, Defendant produced the entire ESI data to EEOC on or about June 25, 2024.

In light of the complete history of discovery to date, it is evident that EEOC's request for an award of sanctions against Defendant is nothing more than a litigation tactic intended to harass Defendant.  Defendant fully complied with the Court's order on EEOC's motion to compel as to the May 24, 2024 deadline to produce documents regarding stores warehouse associates and the other specified documents. (Doc. 34 at 3-4, ¶ 1(i).)  Beginning May 12, 2024, Defendant produced responsive ESI documents after reviewing several thousand documents but was unable to identify 7,000 responsive documents by that production date. Thereafter, in full consultation with EEOC, Defendant focused on the much larger issue of processing and producing the **379GB** of ESI data and, six (6) weeks later, produced 111,412 (combined) or 161,336 (combined and families) for an average of 18,569 (combined) documents per week or 26,890 (combined and families) documents per

week for the preceding 6 weeks. At all stages of this process, Defendant remained in constant, nearly daily consultation with EEOC on the ESI production. In addition, Defendant produced numerous documents and spreadsheets regarding stores warehouse associates.

The sanctions available under Rule 37(b) are predicated upon the presence of such factors as willful disobedience, gross indifference to the right of the adverse party, deliberate callousness, or gross negligence. *Dorsey v. Academy Moving & Storage, Inc*., 423 F.2d 858, 860 (5th Cir. 1970).  Additionally, Courts consider whether the other party is prejudiced in its preparation for trial. *Marshall v. Segona,* 621 F.2d 763, 768 (5th Cir. 1980).

As the facts outlined above amply demonstrate, Defendant has been engaged on a nearly full-time basis in (i) responding to EEOC's seemingly endless demands for documents, (ii) participating in conferrals by virtual meetings and emails, and (iii) providing explanations regarding the documents produced. Defendant indisputably has not engaged in willful disobedience, gross indifference to the right of the adverse party, deliberate callousness, or gross negligence.  Moreover, contrary to its assertion, EEOC has not been prejudiced in its preparation for further discovery such as depositions or trial.  EEOC argues that it had to "push back depositions it that it was scheduling for June and July 2024" but it had not noticed any of those depositions and it has not incurred any expense in relation to that proposed, tentative

deposition schedule. EEOC's argument is disingenuous at best given that, incredibly, EEOC served another overly broad and burdensome request for production of documents on June 27, 2024, thereby of its own volition, making June and July deposition dates impractical.[3] Moreover, EEOC recently moved (unopposed)[4] to continue the trial and pretrial deadlines including the discovery deadline. The Court granted that motion, extending the discovery deadline to April 15, 2025 and thereby providing EEOC plenty of time to schedule depositions. (See Doc. 54.)

For the reasons set forth above, Defendant Kanes Furniture, LLC d/b/a Kane's Furniture, respectfully requests that this Court deny Plaintiff's Renewed Motion to Compel Production of Documents and for Sanctions and award Defendant its attorneys' fees for having to respond to this frivolous motion.

Respectfully submitted,

FORD & HARRISON LLP

*/s/ Merry E. Lindberg*
Merry E. Lindberg
Florida Bar No. 308102
mlindberg@fordharrison.com

---

[3] It should be noted as well that EEOC is attempting once again to expand the scope of this case to include yet another job that was not at issue in Ms. Cross's charge of discrimination and seven months after it filed the complaint in this case, i.e., customer service representatives.

[4] As early as March 29, 2024, Defendant stated its willingness to confer and agree with EEOC to amended case management report and schedule in its response to EEOC's original motion to compel.  (Doc. 28 at p. 16.)

515 North Flagler Drive, Suite 350
West Palm Beach, Florida  33401
T (561) 345-7405 | F (561) 345-7501

Todd Aidman, Esq.
Florida Bar No. 173029
taidman@fordharrison.com
T (813) 261-7840
Luis Santos, Esq.
Florida Bar No. 84647
lsantos@fordharrison.com
401 East Jackson Street, Suite 2500
Tampa, Florida 33602
T (813) 261-7852

Sara K. Finnigan
Florida Bar No. 1032142
sfinnigan@fordharrison.com
300 S. Orange Avenue, Suite 1300
Orlando, Florida 32801
T (407) 418-2325 | F (407) 418-2327

*Attorneys for Defendant*

## **<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on July 12, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to: Sabarish P. Neelakanta, Esq., Melissa Castillo, Esq., and Beatriz Biscardi Andre, Esq., Equal Employment Opportunity Commission, Miami District Office, 100 S.E. 2nd Street, Suite 1500, Miami, Florida 33131, email:

Sabarish.Neelakanta@eeoc.gov;
Melissa.Castillo@eeoc.gov;
Beatriz.Andre@eeoc.gov.

FORD & HARRISON LLP

*/s/ Merry E. Lindberg*
Merry E. Lindberg
Florida Bar No. 308102